## CIRCUIT COURT OF THE CITY OF RICHMOND

Convalescent Care, Inc., et al.

v.

Department of Medical
Assistance Services

January 4, 2002

Case No. HQ-107

BY JUDGE T. J. MARKOW

This case comes before the Court on petitioner's appeal of the Department of Medical Assistance Services' final agency decision not to use the corrected data submitted by the provider during the review period.

Petitioner argues that Department's decision should be overturned because there are no prohibitions on amending submissions to the Department and because fundamental fairness dictates that the provider should be reimbursed based on the correct data.

Respondent counters that its final agency decision should be affirmed for the following reasons: petitioner's lack the right to appeal this decision; petitioners have failed to bear the burden of proof as required by the statute; the director's final agency decision is a correct interpretation and application of the law and regulations governing reimbursement; and, the director's decision observed the required procedures except as to that which may be determined mere harmless error.

Facts of the case are not in dispute and are as follows. Plaintiff Convalescent Care, Inc., operates four nursing homes in the metropolitan area, one of which, the Forest Hill convalescent Center, is the center at issue in this motion for summary judgment. Some of the residents at the Forest Hill facility are Medicaid participants and Convalescent Care is reimbursed for the cost of care of these residents pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*

In Virginia, that federal reimbursement program is administered by the Virginia Department of Medical Assistance Services, which promulgates the regulations for the program as well. The Department uses the Patient Intensity Rating System to determine reimbursement to individual facilities. PIRS gives each Medicare patient at the facility a rating based on the intensity of the services required by that particular patient and the Department uses cost reports submitted by each provider to derive a score for that provider. The score for each provider is based on all the ratings divided by the mix of residents and their required level of care. This score is expressed in the form of a percentage and each year Forest Hill has scored in the range of 98% with the exception of 1997, the year at issue in this case.

While its 1997 cost report was under review by the Department, plaintiff discovered an error in its cost reports and submitted corrected data. Although the mix of patients remained unchanged in 1997, for that year, the Forest Hill facility received a score of 94% and the Department concluded that it would not consider any correction submitted by the provider during the review period.

Convalescent Care appealed the department's decision and an administrative hearing was held on April 4 and 5, 2000. On September 25, 2000, the hearing officer concluded that the Department had acted arbitrarily in this matter and recommended that the Department be ordered to recalculate the PIRS score for the Forest Hill facility for the third and fourth quarters of 1997 and pay any additional reimbursement due to Convalescent by reason of such recalculation.

On December 15, 2000, the director of the Department issued his final agency decision in which he deleted or modified a number of the hearing officer's key findings and conclusions, including the conclusion that the Department should recalculate the reimbursement due.

On January 2, 2001, Convalescent Care petitioned this Court for a review of this decision.

Pursuant to 12 VAC 30-90-300, the Virginia Medicaid Program reimbursement system for nursing facilities is the Patient Intensity Rating

System. PIRS is a patient-based reimbursement system which links a facility's *per diem* rate to the level of services required by its patient mix. This methodology uses classes that group patients together based on similar functional characteristics and service needs. DMAS receives this information by way of cost reports submitted by providers.

Pursuant to 12 VAC 30-90-70, cost reports are due not later than 150 days after the provider's fiscal year end and a cost report is not complete until it has been certified by the provider as accurate. Once the cost report is submitted, DMAS reviews the data, and, based on the Service Intensity Index for the provider's region, it calculates the provider's reimbursement rate. DMAS collects this data and calculates for every provider in the Commonwealth that seeks reimbursement of costs associated with caring for Medicare patients.

Petitioner does not challenge the accuracy of the index calculated by DMAS' using the information originally provided. Petitioner challenges DMAS' decision not to use corrected data provided to DMAS during the review period.

The Court reviews the agency's decision based upon three categories. First, whether the agency acted in accordance with state law. The second is whether the agency had sufficient evidentiary support for its decision. The third is whether the agency made a procedural error that is not harmless.

In calculating Forest Hill's PIRS for the third and fourth quarters of 1997, DMAS proceeded pursuant to 12 VAC 30-90-300, taking the data provided by Convalescent Care and adjusting the provider's rate according to the mix of residents and their required level of care. DMAS followed the regulations governing calculations of the provider's PIRS, and, although petitioner challenges DMAS' failure to note the significant difference in the rate for these two quarters as compared to other reporting periods, petitioner does not challenge the accuracy of those calculations based on the information petitioner provided to DMAS. Thus DMAS' actions were not arbitrary or capricious and there is sufficient evidentiary support for the calculations. Further, because DMAS followed proper procedure in calculating petitioner's PIRS, there is no procedural error, harmless or otherwise. Therefore, DMAS calculation of PIRS for Forest Hill Nursing Home for the third and fourth quarters of 1997 is affirmed.

DMAS' Final Agency Decision accepted some but not all of the Hearing Officer's findings. Pursuant to Virginia Code § 2.2-4020(D), the Hearing Officer's decision is a recommendation only. The Director is free to accept all, part, or none of the Hearing Officer's decision without exceeding his statutory authority.

DMAS specifically rejected the Hearing Officer's findings that it should have been apparent to DMAS that the data was incorrect; that had the error been adverse to DMAS, it certainly would have reviewed it and corrected the PIRS score; that there are no deadlines for submission of data; that there is no evidence of any prejudice to DMAS; that this issue is properly appealable; and that DMAS acted arbitrarily in this matter.

DMAS regulations require that the department use cost reports submitted by providers to calculate the rate of reimbursement but does not charge DMAS with making an instant comparison of the current data with previous data in order to ascertain its accuracy. The regulations permit DMAS to review and audit but do not require it.

Chapter 12 of the Virginia Administrative Code at section 30-90-70 discusses penalties for delinquent submissions. Consequently, it cannot be true that there are no deadlines.

The Director offered evidence that accepting corrected data from providers during or following the review period would hamper DMAS' ability to complete the process of determining the rate of reimbursement for each of the individual providers and would likewise interfere with the actual reimbursement process.

The purpose of the reimbursement program is to enlist participation of a sufficient number of providers of services in the program so that eligible persons can receive the medical care and services included in the plan to the extent these are available to the general population. Inhibiting the reimbursement process contravenes the program's purpose.

Refusal to consider the revision is an appealable decision pursuant to the Administrative Process Act, because it involves the agency's taking an affirmative action.

DMAS' refusal to consider the corrected data in calculating the PIRS in question was within the statutory authority of 12 VAC 30-90-70. The Director offered sufficient evidence to support this decision, as discussed above, and DMAS followed regulatory procedure in receiving and considering the original data as submitted by the provider.

The Court, therefore, finds that none of the Director's decisions were arbitrary and capricious and that there is substantial evidence in the record to support his conclusions. DMAS' finding that the failure to accept the corrected data was an affirmative act was erroneous; however, that error was harmless because petitioner's appeal has received full consideration.

Finally, the Court wishes to make it clear that petitioner's fundamental fairness argument has been a vital consideration in this opinion. Petitioner

concedes it was petitioner's responsibility to submit accurate data and that, in this case, it did not. If the Court were to order respondent to accept petitioner's corrected data during or after the review process, the department would have to accept corrected data from every provider submitting cost reports. Such a policy could completely frustrate the purpose of the program, prolonging the index calculation process, and creating delays in reimbursement.

Finding for respondent permits the department to continue reimbursing in a uniform and expedient fashion and encourages providers to submit accurate information.

Therefore, the Court orders that the Final Agency Decision of the Director of the Department of Medical Assistance Services is affirmed.